## J. C. CARSON v. PINK DOGGETT
### and
## WESLEY WARD v. PINK DOGGETT.

(Filed 29 March, 1950.)

**1. Trial § 22a—**

On motion to nonsuit, the evidence will be considered in the light most favorable to plaintiff.

**2. Trial § 22b—**

Defendant's evidence in conflict with that of plaintiff will not be considered on motion to nonsuit.

**3. Malicious Prosecution § 10—**

Evidence *held* sufficient to overrule nonsuit in this action for malicious prosecution.

**4. Malicious Prosecution § 1a—**

In order to constitute an action for malicious prosecution there must be (1) the institution or the procurement of the institution of criminal proceedings, (2) without probable cause, (3) with malice, and (4) termination of the prosecution in plaintiff's favor.

**5. Malicious Prosecution § 3—**

Probable cause is the existence of facts and circumstances sufficient to induce a reasonably prudent man to believe the person charged is guilty of the offense, the criterion being apparent guilt as contra-distinguished from real guilt, and is a question of law for the court when the facts are admitted or established.

**6. Same—**

The acquittal of the person charged does not make out a *prima facie* case of want of probable cause.

**7. Malicious Prosecution § 11—**

An instruction merely defining probable cause is insufficient, it being required that the court charge the jury that if the jury should find certain facts by the greater weight of the evidence, whether such facts would or would not constitute probable cause.

**8. Malicious Prosecution § 10—**

A motion for judgment as of nonsuit in an action for malicious prosecution challenges the validity of the warrant upon which the plaintiff was prosecuted, since if the warrant be invalid the action will not lie.

**9. Indictment and Warrant § 10—**

> A warrant must sufficiently identify the person accused, Fourth Amendment to the Constitution of the U. S., Constitution of N. C., Art. I, Sec. 15, G.S. 15-19, G.S. 15-20.

**10. Indictment and Warrant § 15—**

> Our courts have authority to amend warrants defective in form, and even in substance, provided the amendment does not change the nature of the offense charged in the original warrant. G.S. 7-149 (12).

**11. Malicious Prosecution § 10—**

> The evidence tended to show that the warrant named a specified person, that another person, whom the accuser intended to have arrested, was arrested thereunder, and that after arrest the name of the person arrested was substituted for the name originally appearing in the warrant. There was no evidence that the name of the party to be arrested was unknown, and no question of inadvertence or amendment. *Held:* The evidence tends to make out a cause of action for false imprisonment rather than malicious prosecution, and defendant's motion to nonsuit the action for malicious prosecution should have been allowed.

APPEAL by defendant from *Pless, J.,* at September Term, 1949, of McDOWELL.

These are actions brought by the plaintiffs Carson and Ward against the defendant Doggett, to recover damages for malicious prosecution of the plaintiffs by the defendant on a charge of larceny. The cases were consolidated for trial by order of the trial judge.

The evidence tends to show that the defendant purchased a large pile of slabs for $50.00. The slabs were located in an isolated section of McDowell County, known as Bracket Town. James Williams, the owner of a truck, and J. C. Carson and Wesley Ward, drove over to Bracket Town on 27 February, 1948, to get a load of these slabs. Carson had gone with Williams to Bracket Town on prior occasions to get slabs, but Ward was accompanying them for the first time. Williams, who owned and operated the truck, picked up Ward on the street in Marion on his way to Bracket Town. Ward was a regular employee of the Southern Railway Company and had been for fifteen years, but he also helped Williams with his hauling from time to time, as did Carson.

On the occasion in question, when Williams, Carson and Ward arrived at or near the pile of slabs in Bracket Town, according to the testimony of Ward, the defendant Pink Doggett drove up and "asked Williams how many loads of slabs he had hauled, and Williams said he hauled one before the snow and two at the time of the snow. Williams asked Pink what he got for a load and Pink said $5.00. Pink said, 'Who gave you permission to get those slabs?' and Williams said, 'Walter Upton,' and Pink said, 'Let's go to see him.' They went on up and called Walter Upton, and Pink said, 'Did you give this white fellow permission to get

those slabs?' and Upton said, 'Yes, I didn't think there would be any harm in it.' "

Upton, as a witness for the defendant, denied that he told Williams he could get any of the slabs that belonged to Pink Doggett.

The defendant testified, the white gentleman, Mr. Williams, offered to pay $5.00 a load for the slabs, and offered to pay $5.00 then and the balance on Tuesday. He said, "No, I'll just wait. . . . I saw it was a stealing case and I hadn't any authority to settle a case like it."

The plaintiffs and the defendant are colored men. At no time, according to the plaintiffs' evidence, during the conversation between Williams, the owner of the truck, and the defendant Doggett, or during the conversation with Upton, did anyone ask these plaintiffs anything about the slabs, and they made no statement about them. The defendant, however, testified that Carson admitted helping Williams "move every load and also that he hauled some slabs when Mr. Williams wasn't along." But, on cross-examination, the defendant admitted that he did not have a scintilla of evidence that Wesley Ward got any slabs. No slabs were taken on 27 February, 1948.

The defendant had warrants issued on 27 February, 1948, charging the plaintiff J. C. Carson and Harrison Long with the larceny of slabs belonging to him, valued at more than Fifty Dollars. However, Wesley Ward, not Harrison Long, was arrested on the warrant issued against Long. Carson and Ward were kept in jail five days, and then released on bond. Both defendants (the plaintiffs in these cases) were acquitted of the charge of larceny in the McDowell County Criminal Court, 9 March, 1948.

During the trial on these warrants, according to the defendant's evidence, the trial judge suggested that he be paid $15.00 for the three loads of slabs. This amount was paid into court and turned over to him with the approval of the court. But there is no evidence on the record that would indicate that either of these plaintiffs paid the $15.00 or any part thereof.

The warrant offered in evidence as plaintiffs' Exhibit No. 1, purporting to be issued against Wesley Ward, was not issued against him at the time of its execution. The defendant testified that he did not know the name of Wesley Ward at the time he applied for the warrant, but "we got it later." It does not appear from the evidence when Wesley Ward's name was inserted. It does appear that the warrant was originally drawn against Harrison Long, which name, according to the record, has a mark drawn through it where his name appears as the defendant and also where it appears in the affidavit, and Wesley Ward's name was inserted in both places, but the order of arrest, that is the warrant, does not, and never has, contained the name of Wesley Ward; instead, it is

directed to any lawful officer of McDowell County to arrest Harrison Long, and him safely keep, so that he might be brought before the officer issuing. the warrant, to answer the complaint therein set forth.

From the verdicts in favor of the plaintiffs and the judgments entered pursuant thereto, the defendant appeals and assigns error.

*Roy W. Davis for plaintiffs.*
*Stover Dunagan and Proctor & Dameron for defendant.*

DENNY, J. The defendant assigns as error the refusal of the court below to grant his motion for judgment as of nonsuit in each case. The cases will be considered separately.

### APPEAL IN. THE CASE OF CARSON *v.* DOGGETT.

We think the evidence introduced in the trial below, when considered in the light most favorable to plaintiff, as it must be on motion for judgment as of nonsuit, is sufficient to withstand such motion. *Potter v. Supply Co.,* 230 N.C. 1, 52 S.E. 2d 908; *Winfield v. Smith,* 230 N.C. 392, 53 S.E. 2d 251; *Grier v. Phillips,* 230 N.C. 672, 55 S.E. 2d 485. Moreover, defendant's evidence in conflict with the evidence of the plaintiff will not be considered on motion to nonsuit. *Chesser v. McCall,* 230 N.C. 119, 52 S.E. 2d 231; *Bundy v. Powell,* 229 N.C. 707, 51 S.E. 2d 307; *Taylor v. Hodge,* 229 N.C. 558, 50 S.E. 2d 307.

The 5th exception and assignment of error is to the failure of the court to state in a plain and correct manner the evidence given in the case and declare and explain the law arising thereon, in that the court failed "to state and explain to the jury what facts, if found to be true by the greater weight of the evidence, would constitute probable cause for indicting and prosecuting each of the plaintiffs."

In order to establish his cause of action for malicious prosecution, the plaintiff must prove: (1) That the defendant instituted or procured the institution of the criminal proceeding against him; (2) that the prosecution was without probable cause; (3) that it was with malice; and (4) that it was terminated in his favor. *Mooney v. Mull,* 216 N.C. 410, 5 S.E. 2d 122; *Perry v. Hurdle,* 229 N.C. 216, 49 S.E. 2d 400; *Alexander v. Lindsey,* 230 N.C. 663, 55 S.E. 2d 470.

In the trial below, "probable cause" was defined as meaning "that the action was instituted without sufficient knowledge and information on the part of the defendant as would cause him or any other reasonably prudent person to believe the plaintiff to be guilty of the offense charged."

In an action for malicious prosecution, it is the duty of the judge to go further than to define probable cause, leaving the jury to determine

what facts do or do not constitute probable cause. He must instruct the jury as to what facts, if found by it from the evidence, will show that there was or was not probable cause. *Wilkinson v. Wilkinson,* 159 N.C. 265, 74 S.E. 740. In the last cited case, *Walker, J.,* in speaking for the Court, quoted with approval the definition of probable cause as given in *Smith v. Deaver,* 49 N.C. 513, as: "The existence of circumstances and facts sufficiently strong to excite, in a reasonable mind, suspicion that the person charged with having been guilty was guilty. It is a case of apparent guilt as contra-distinguished from real guilt. It is not essential that there should be positive evidence at the time the action is commenced, but the guilt should be so apparent at the time, as would be sufficient ground to induce a rational and prudent man, who duly regards the rights of others as well as his own, to institute a prosecution; not that he knows the facts necessary to insure a conviction, but that there are known to him sufficient grounds to suspect that the person he charges was guilty of the offense."

In *Smith v. Deaver, supra,* the Court also said: "What is probable cause is a question of law, to be decided by the court upon the facts, as may be found by the jury." Likewise, when the facts are admitted or established, the question of probable cause is one of law for the court. *Rawls v. Bennett,* 221 N.C. 127, 19 S.E. 2d 126; *Morgan v. Stewart,* 144 N.C. 424, 57 S.E. 149. It is also well to keep in mind that in an action for malicious prosecution, the acquittal of the defendant by a court of competent jurisdiction does not make out a *prima facie* case of want of probable cause. *Morgan v. Stewart, supra.*

Consequently, the defendant was entitled to have the court instruct the jury that if upon the question of probable cause, the jury should find certain facts from the evidence, and by its greater weight, whether such facts would or would not constitute probable cause. *Beale v. Roberson,* 29 N.C. 280; *Vickers v. Logan,* 44 N.C. 393; *Jones v. Railroad,* 125 N.C. 227, 34 S.E. 398; *Wilkinson v. Wilkinson, supra; Humphries v. Edwards,* 164 N.C. 154, 80 S.E. 165; *Tyler v. Mahoney,* 166 N.C. 509, 82 S.E. 870.

We think the exception to the charge is well taken and must be sustained.

The defendant is entitled to a new trial on this appeal, and it is so ordered.

## APPEAL IN THE CASE OF WARD v. DOGGETT.

The motion for judgment as of nonsuit, interposed below, was properly overruled, if the warrant on which the plaintiff was arrested and tried in the McDowell County Criminal Court was a valid warrant, otherwise not.

The validity of the warrant on which Wesley Ward was arrested and imprisoned is challenged by the motion for nonsuit as well as by the exception to the following portion of the charge:

"There is one matter, gentlemen of the jury, that the Court wishes to clear up by a simple statement of the law, and that is, gentlemen, it appeared from the warrant issued in the *Ward case* that although the affidavit upon which the warrant was based charging the defendant Ward with the crime of larceny, that the actual warrant itself did not have his name on it but had the name of some third person on it, but it further appeared that the plaintiff was arrested on that warrant, even though the name of another person appeared on it. The Court instructs you, gentlemen of the jury, that if the name of some other person was inadvertently inserted in the warrant by the magistrate when it was intended that the name of the plaintiff should have been inserted in it, and that the plaintiff Ward was arrested upon that warrant, even though that was not his name, the Court instructs you that would not absolve the defendant Doggett in this case from responsibility. I do not mean by that to say that means you should answer this first issue YES, but I do mean to say that if you find the situation existed as I have just referred to it, that you would treat the matter in the same manner as if the proper name, that of the plaintiff Ward, had been inserted in the warrant instead of that of a third person."

The real question presented for decision is whether the evidence on this record makes out a case of malicious prosecution or one of false imprisonment. The answer turns upon whether the warrant upon which Wesley Ward was arrested was valid or invalid.

According to the evidence of the present defendant, Pink Doggett, he did not know the name of Wesley Ward at the time he procured the warrant against Harrison Long for stealing his slabs. He further testified: "I intended to write a warrant against Wesley Ward and I did cause this paper (plaintiffs' Exhibit No. 1) to be issued by the magistrate, and I swore to it and signed it. . . . When I swore to this warrant, I gave it to the officer . . . Wesley Ward is the man I intended to have arrested, . . . and I got him put in jail, . . . and he was found not guilty by the judge."

There is no evidence on this record to the effect that Wesley Ward was known as Harrison Long. Neither was there anything in the original affidavit or the warrant to indicate that the name of the party to be arrested was unknown. Likewise there was no evidence offered in the trial below to indicate that the name of Harrison Long was inserted in the affidavit or the warrant through inadvertence. Neither did the warrant when issued and turned over to the officer to be served, contain any description by name or otherwise of Wesley Ward. The evidence

CARSON *v.* DOGGETT and WARD *v.* DOGGETT.

does not disclose who inserted Wesley Ward's name in the affidavit or when it was inserted or by what authority.

The Fourth Amendment to the Constitution of the United States declares that "the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated; and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the person or things to be seized." And our statutes, G.S. 15-19 and 20, authorize the issuance of a warrant by a proper judicial officer only after the examination of the complainant and any of his witnesses on oath, and "if it shall appear from such examination that any criminal offense has been committed, the magistrate shall issue a proper warrant, . . . reciting the accusation, and commanding the officer to whom it is directed forthwith to take the person accused of having committed the offense, and bring him before the magistrate, to be dealt with according to law."

In the case of *West v. Cabell,* 153 U.S. 78, 38 L. Ed. 643, the warrant had been issued for the arrest of "James West" and not otherwise designating or describing the person to be arrested, charging James West with murder. The person arrested was Vandy M. West. Evidence was permitted to be introduced, over plaintiff's objection, to the effect that Vandy M. West was the party for whose arrest the warrant was intended; and the jury was instructed that "if they believed that the plaintiff was the man for whose arrest the commissioner issued the warrant, the defendants were not liable for damages on account of the mere fact of arrest." But the Court said: "By the common law, a warrant for the arrest of a person charged with a crime must truly name him, or describe him sufficiently to identify him. . . . The principle of the common law, by which warrants of arrest, in cases criminal or civil, must specifically name or describe the person to be arrested, has been affirmed in American constitutions; and by the great weight of authority in this country a warrant that does not do so will not justify the officer making the arrest. . . . The effect of the rulings and instructions of the court was to give the jury to understand that the private intention of the magistrate was a sufficient substitute for the constitutional requirement of a particular description in the warrant. For this reason, the judgment is reversed and the case remanded" and a new trial was granted. 22 Am. Jur., False Imprisonment, Sec. 73, p. 405; *Duffy v. Keville,* 16 Fed. Rep. 2d 828; Const. of North Carolina, Art. 1, Sec. 15; *Brewer v. Wynne,* 163 N.C. 319, 79 S.E. 629.

In the instant case, there was no objection to the testimony of Pink Doggett to the effect that he got the man arrested he intended to get, but

his counsel do challenge the correctness of the court's instruction to the jury in this respect.

Under our practice, our courts have the authority to amend warrants defective in form and even in substance; provided the amended warrant does not change the nature of the offense intended to be charged in the original warrant. G.S. 7-149, Rule 12; *Alexander v. Lindsey,* 230 N.C. 663, 55 S.E. 2d 470; *S. v. Brown,* 225 N.C. 22, 33 S.E. 2d 127; *S. v. Mills,* 181 N.C. 530, 160 S.E. 677; *S. v. Poythress,* 174 N.C. 809, 93 S.E. 919; *S. v. Telfair,* 130 N.C. 645, 40 S.E. 976; *S. v. Smith,* 103 N.C. 410, 9 S.E. 200. But we are not dealing with an amended warrant or a motion to amend. We must take the record as presented and say whether or not in the face of defendant's challenge to the sufficiency of the evidence, the plaintiff has made out a case of malicious prosecution. It is unfortunate that the pleadings were not so cast as to allege a cause of action for malicious prosecution and for false imprisonment. *Caudle v. Benbow,* 228 N.C. 282, 45 S.E. 2d 361; *Rhodes v. Collins,* 198 N.C. 23, 150 S.E. 492. However, on the facts presented, we do not think the plaintiff makes out a case of malicious prosecution, but he does make out one of false imprisonment. *Caudle v. Benbow, supra; Rhodes v. Collins, supra; McCaskey v. Garrett,* 91 Mo. 354.

The motion of nonsuit should have been sustained in this case.

In the case of *Carson v. Doggett*—New trial.

In the case of *Ward v. Doggett*—Reversed.